Good morning, if it pleases the Court. Michael Citron on behalf of the Plaintiff, Rachel Landau. It is the position of the Plaintiff that the District Court got it, or excuse me, aired when the Court addressed the question that was before it and addressed it in the request that a foreclosure sale be rescheduled while a borrower is engaged in a modification plan when a final foreclosure judgment and or order of sale was entered prior to the commencement of the trial modification plan. Now, certainly to a degree, the statute itself could be read, if I were to give my colleague the deference and say that there's a way to read the statute in their favor, one would only be able to look at that statute in their favor if they were not familiar with the breadth of what Regulation X truly stands for. What I mean by that is that to understand when the statute under 41, 1024.41 specifically, states that a servicer is prohibited to move for a foreclosure judgment or order of sale or conduct a foreclosure sale. Let me ask this, counsel. Is it your position it would have violated Regulation X if Randham had simply done nothing? I'm sorry, if who would have done nothing, Your Honor? If Randham had simply done nothing. Absolutely. Absolutely. It's unequivocal in the statute itself. They must take reasonable steps. It's in 1024. I thought it said, Reg X, a servicer shall not move for foreclosure judgment or order of sale. I thought you were relying on the violation of those terms. Well, Your Honor, respectfully, in this particular case, that's precisely what happened. I might also quantify for the record. I'm sorry. My question is, if they hadn't moved for foreclosure judgment or order of sale, done nothing, either advertently or inadvertently, done nothing, would that violate Reg X? Again, my position remains the same, Your Honor, that yes, it would. What terms of Reg X would it violate? Well, under 1024.41, Your Honor, it does specifically require them to take reasonable steps. Specifically under 1024.41, it requires under subsection G, and we'll go to that section there. We've actually dealt with it specifically in our ... So you're saying it violates the statute, but not the regulation? Well, the regulation and the statute, Your Honor. I believe that Regulation X, the regulation itself, requires that a reasonable step be taken by the servicer. By not doing that, which the reasonable step here would have been to do something, not to do nothing, as we'll continue to violate 41. Here we have a more pernicious result, though. Here they did specifically move to reschedule or otherwise reset the sale. I'm sorry. I'm sorry. This is getting me confused. I've got Reg X in front of me. I don't see anywhere it says take reasonable steps. Maybe I just didn't get the whole regulation. Is that language in Regulation X? I read it to say a servicer shall not move for a foreclosure judgment or order of sale or conduct a foreclosure sale unless ... Yes, Your Honor. That is correct. I believe then in the alternative, what I mean to clarify is I believe that the statement that I'm referring to is regarding the commentary to the rule. I apologize. Okay. All right. Another fundamental problem, and I understand your argument once we get past the fundamental problems, but the problem here is that Random is the one that sent the notice, motion to cancel and reschedule, not Round Point. You've got the principal sending it, not the agent, but you've sued the agent, the servicing company, for something the agent didn't do. Well, Your Honor, respectfully, there's two points. One, I see where Your Honor is going now with the first point, and I think that certainly the commentary, as has been even understood by this very court, does impart meaning onto the regulation itself, but I think that that is a little bit of a misnomer to invoke one of the terms used by this court earlier this morning. It's a bit of a red herring. The reason for that, Your Honor, is simply that to say that somehow Round Point is inculcated from liability as a result of its name not appearing in the caption of a case, then what this court would essentially be doing is carving out an exception that doesn't exist under the law. They would be essentially ... No, we would just simply be saying no one could be held responsible under the law unless they did something that violates the law, and there's no evidence or allegation here that Round Point itself actually did anything. Actually, Your Honor, respectfully, I don't believe that that is accurate. What we claim ... Then you've led something that's directly contrary to the supporting document that you relied on. Well, the supporting documents we relied upon, which also, I believe, if I'm not mistaken, Round Point itself introduced as a final judgment, which notes, in particular, that it was the prior servicer, in fact, that was the power of attorney for the plaintiff in the foreclosure case, not plaintiff in the appeal or in the district court case, but in the foreclosure case. Yes, but you didn't sue the prior servicer. Correct. We didn't because of paragraph 29 of our complaint in the district court, which from the prior servicer, it's servicing obligations and duties. That's what we pled. Yes, but then Round Point has to do something in violation of those duties, and you haven't pled that it did anything. At least the operative document, which you contradict, doesn't indicate anything that it did. I mean, what you incorporate doesn't indicate that it did anything. I mean, again, I would point the court respectfully to the documents attached to the complaint, as well as we can see a document 1-3, for example, which would be attached to the complaint. We see there that it's the Round Point's Mortgage Servicing Corporation letter to the plaintiff, in this case, advising them, among other things, that they will not This is specifically the agreement. Which means it's not going to take any action. To pursue it, but that's precisely what they did. That doesn't mean we moved for our foreclosure sale. It just means we're not going to. We're not going to do anything. I've worn this point out. Maybe it's not bothering my colleagues, but I don't want to just continue arguing for you. You can proceed with your argument. Yes, Your Honor. I think that ultimately the essential question that's before this court really is not to do with the servicing transfer whatsoever at all. The court based, the district court based its opinion on one specific avenue of this law, and that was itself does not afford protections, which it does. Can I ask you something? You concede, as you must, that they actually already had a foreclosure judgment and order of sale back in February 2016. Absolutely, I do. They'd already before the agreement filed a dispositive motion and got a foreclosure judgment and order of sale, right? February 3rd, 2016, Your Honor. And then that got continued three times. Yes, that is correct. You didn't have a complete loss mitigation, but the first sale was to be like in... June 2nd. June 5th, and then they continued it again. Yes, Your Honor. Then they continued again. Yes, Your Honor. The third time you did come together and have an adequate loss mitigation. Yes, the loss mitigation package was submitted prior to the 37-day deadline. But there's already a foreclosure judgment and order of sale extent here. Correct. Okay, and the only thing left to do is to sell. Yes, Your Honor. That's all to have the actual sale. I'm just trying to understand. I'm not going to get into how we interpret the regs. You just want me to try to... Understood, and in that question, yes, Your Honor. You've answered my questions. Thank you. If there's no further questions, Your Honors. Thank you, counsel. I please the court. Keith Thomerson on behalf of Round Point Marine Servicing. Last today, but hopefully not least. I am here today to talk about the judge's ruling below. First of all, I do believe that Judge Bloom's ruling in part was based upon the fact that plaintiff did not plead a relationship between Random and my client, Round Point, to implicate Round Point in the motion that was filed, which is central to the lawsuit. Let me ask you a question just for purposes of this sort of set of questions. Just assume that we can attribute Random's actions to Round Point in moving to cancel the sale and reschedule it. The motion sought to reschedule it at least 30 days later, right? That's correct. Okay, so if the loan modification plan was being followed, then every month it seems like you would have to cancel and reschedule the foreclosure sale, right? Or am I missing something? Well, Your Honor, in practicality and the way these things work out, you go before the court, you explain what's going on. One would hope that the judge would set the foreclosure sale out further than 30 days, notwithstanding the fact that that was the request in that motion. If the court looks back at the previous motions that were filed by Random, it all had that same language in it. Let me ask you— Better for worse, that seems to be what happened there. Okay, so for how long could, under your theory, for how long could Round Point keep canceling and rescheduling the sale? Could it do it until the mortgage ran out? No, Your Honor, that's not—no. So how long could it do it for? There was a temporary payment plan, which was to be fulfilled by Ms. Landau and hopefully getting a permanent loan mod. And in fact, that's actually what did happen. She completed the temporary loan mod, the sale was canceled, the mortgage was never foreclosed, there was never a sale. Okay, so just to make sure I'm understanding, your position is that it could have been canceled and rescheduled for as long as she was in the temporary loan situation. Perhaps, but hopefully, if I were handling the hearing, I would have asked that the judge push the foreclosure sale out beyond that point. But there is an issue that's part and parcel of that whole analysis, and that is, at the time that Random filed its motion to cancel the foreclosure sale, the first payment under the temporary loan mod was not even due yet. So Random was at that point in possession of a foreclosure and an order of sale, which I believe Judge Bloom correctly analyzed in looking at this whole situation below, and is taking the good faith step in offering this loan mod to Ms. Landau within a month or so of the foreclosure sale, steps in and moves to cancel the sale before the first payment is ever due. Let me ask you just as a matter of fact, because I don't have a good feel for this. When we're talking about a temporary loan situation before the remod, before the, what would you call it, a modification? Permanent loan mod, yes. Okay, permanent loan modification comes into play. How long is that period of the temporary modification? I believe in this case it was three payments. I'm going on my memory. I actually think it was six, and they were $1,721, and so it was six months, and the motion you made was on September 22. The first payment was due on, the trial period was from 10-1-16 to 3-17, which I think is six months, and she made the first payment, and you didn't ask for another set to sale or anything. I know she came in and said cancel the whole thing, but you didn't actually, what, it seems to me how this works is that you just, if she makes that first payment, $1,721, y'all didn't make another motion or anything to try to reset the sale. That's correct, Your Honor. You had canceled the prior sale, but you didn't come in. I think Judge Rosenbaum's question, well, so could you have done it six times there? Well, one, you didn't do it, but she made that first payment. That's correct, because she made the remaining. It was a significant one, $721, and then it went away. So it's that first September motion to reset, and I think y'all came to an agreement. What was the date? It just happened right then. Oh, it was in September. September 6th, I believe, and then the, around the 14th or so. Because the sale was set for October 5th, so you canceled that one. She made her payment on October 1st, and you didn't have all the resets. Right. For the rest of the payout. And if I may, Your Honors. Is that right? You didn't move to reset it again? It was never, there was never another motion to reset the sale, ever. And what, do you know, is there a regulation or a part of the statute that requires that you cancel the sale and not move for further rescheduling after the temporary modification period? I do not, other than the regulation that we're talking about here today. And I believe that, you know, if there's performance under the mod, that's another whole factor of consideration in whether one moves forward with requesting the sale date. All the cases I have read have dealt with, which have dealt with that issue, is when the borrower's beginning to flounder and not perform, then perhaps moving at that point for the sale date, if it's been canceled, is the correct move to do. But I do not. I mean, I will tell you what you've said off the top of my head doesn't sound unreasonable, but I'm wondering where the source is. So, in other words, and I know, I realize this issue isn't before us, but just for purposes of conducting this analysis, what if we had a situation where the, where there's a temporary loan modification, all goes well, and then we get into the permanent loan modification, all is going well, and the servicer keeps canceling and seeking to reschedule the foreclosure? Well, at that point, Your Honor, there's a novation, basically, because once you have to rely on the state court at that point, once you have a permanent loan mod, the previous note and mortgage as being foreclosed is a foregone thing, because you've entered into a new contract. That answers the question. Yes. Thank you. Yes, Judge. And I scoured the official commentary to see if I could find something on this point. It's an esoteric, odd issue that's before us all. I think it's common sense and that Judge Bloom's analysis was correct. And I take it it's odd here because, I don't know, this is a question, because here, you already had a judgment in the order of sale. Most of these things are dealing with dispositive motions to get that far. You were way down the road here. That's correct, Your Honor. So most cases are prior to being way down the road, where it's just the sale left, where you have this loss modification. In fact, this is a success story that the CFPB would tout, that they have encouraged loan servicers like Roundpoint to work with borrowers like Ms. Landau to helpfully keep them in their home, which is what happened. I wouldn't really get into the merits of that. Just why we don't have a lot of other commentary or regs on this is not really what they were addressing here. I think that's correct. You had the judgment and you also had the foreclosure of sale back in February. Yes, Your Honor, and it's all part and parcel of the same order. The judgment was the order of sale. There was never a new order of sale. It was rescheduled, but there was never a new judgment. You also rescheduled it several times and then you get the loss modification and you reschedule it out. I guess maybe they wouldn't have complained if you scheduled it out six months. I don't know. But it seems to me it doesn't address it. It just seems like the regulation doesn't address this. It doesn't. And if I may, I would like to point the Court to some official commentary to the 2013 amendments to the mortgage servicing rules. And it doesn't deal specifically with 1024G, 1024.41G, but it does deal with 1024.41B3 and it's 78 Federal Register 6382 at 6397. I hate to tell you. It's hard enough to understand this one regulation without getting to amendments that we don't have to look at. But anyway, really. The point is the language deals specifically with rescheduling orders of sale. And I believe it's germane to this point. Because the Bureau, the CFPB, was considering amendments to the rule to deal with the timeliness of when a loan mod application is submitted and what a loan servicer must do in terms of what's approaching with regard to a sale that might be coming forth. Are those the ones they declined to adopt? It is, yes. We're not going to get into regulating all that. But it does say, Your Honor, the Bureau declines to adopt other approaches suggested in the comments. The Bureau notes that structuring the rule such that a borrower's rights may be added or removed because a foreclosure sale was moved or rescheduled would not provide the certainty or simplicity created by the proposed rule. And that's consistent with other official commentary that it's commonplace for servicers like Groundpoint to push out a foreclosure sale when a loan mod is in place. You might not even, I thought about this, you might even not be really willing to do a loan mod at this late date after having continued it three times. If you had to just totally can't, you couldn't go out and reset, it would be a disincentive to do it because you're getting ready to flat sale this thing. That's correct, Your Honor. On October 5th. So it would be a disincentive if you can't just kind of put that out and do this. And from our perspective, Groundpoint is looking at this as a common sense way, which I think is the way that Judge Bloom did, that they wanted to keep Ms. Landau in her home, they did the right thing, they offered the loan mod, but yet they still get punished in a degree by this case by the language that we don't think says what the plaintiff believes it. I think we have it. Sorry, I got a little off track there. The court is correct in that the judgment order sale was entered seven months before Ms. Landau ever accepted the loan mod that was offered by Groundpoint in September. Sales were canceled so many times. The court looked at the reasonableness of whether the language was plain and simple under statutory construction and whether there was even a need to go to any of this legislative intent to see if further meaning needed to be held. And the first rule of statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. The statute's meaning is plain and unambiguous. There's no need for further inquiry. That's U.S. v. SILVA. And if you don't find that Regulation X was violated by the fact that Groundpoint simply moved to reschedule the sale, which was really a non-issue to begin with, you don't even get to the second part of the plaintiff's complaint, which is the FDCPA claim. I'm not sure that that's even germane if the court has any questions or interest in that part of it. The part that we rest our case upon, and I believe I'm really sort of finished my argument, is that Judge Bloom's analysis was correct. Chief, did you have any questions? No, I did not. Thank you. All right, thank you all. Thank you, Counsel. Your Honors, I'd like to just begin by actually going back to what the Chief Judge himself said he doesn't want to deal with. And the truth of the matter is I want to deal with it because I think it's the most important point, because he said it really goes to the fundamental aspect of this case. It's not myself that's saying that Roundpoint moved for a foreclosure sale to be reset. Roundpoint says it. Roundpoint said it in their motion to dismiss. Roundpoint said it so many times, including in their briefs, to the extent that Your Honor, Judge Rosenbaum, noted that they said they can reset it time and time again because they admitted that they had done it. So to say that we're going to go and engage in an exercise of double speak and saying, well, here we said we did it, but here we're not really responsible, I think that this court then deviates away from what it's always stood for. Judge Carnes has said time and time again, we're here to interpret statutes, not to design them. And the statute speaks for itself. And Judge Hull, to look at the regulation, to look at the regulation that was passed, because those amendments in 2013, which did pass, by the way, for 2014, January 10th, the truth of the matter is that B3 says it very clearly, how we are to determine the protections that are afforded to consumers, which is why we are here today. The protections that are afforded to consumers, and I quote, shall be made as of the date a complete loss mitigation application is received. And I think of additional consequence that I think is of great importance is when we look at the Federal Register, which was part and parcel of this appeal, the Federal Register says, and I quote, in a non-judicial proceeding when there is no court action, where 102441G applies, it addresses only the conduct of a sale and a non-existent court proceeding. So that's dealing with the conducting of a foreclosure sale. We can all agree on that because it says it. However, where the foreclosure process requires court action or a court order, 102441G, by the way, that's Florida, and also the case that my colleague stated is inapplicable, which is the Fox case, is 100% on point because guess what? That case is also in a judicial foreclosure state. Foreclosure judgments in those states require a sale date. So what does the regulation say? It requires, where the foreclosure process requires court action or court order, 102441G, it is applicable. And a servicer must comply with both the prohibition against moving for a judgment or order of sale and the prohibition against conducting a foreclosure sale. The bifurcation of a foreclosure judgment and order of sale is because it contemplates that in Florida, like Illinois, like in the Fox case, you cannot possibly have a sale without an order of sale. So it infers that, yes, of course, it would be to their incentive, not to their detriment, to want to offer a modification and cancel the sale ad infinitum if necessary, or not to reset it. And I would state, as someone who's been on the ground, fighting, so to speak, for these types of things in Broward County, as is indicative by the order itself, which is part of the exhibits, the court will note that the top is circled as a 2014 case. Because as many times as Round Point would want to cancel the sale and then reset it, as they admitted to doing, to address Judge Karn's point, the fact remains is that it is up to the foreclosure court not to Round Point whether or not that sale gets canceled. So there are many borrowers, as the regulation, excuse me, as the Bureau itself has stated in its commentary, there are many times that the regulation, although passed, has not been adhered to. So what we're saying to this court today here is that the court absolutely got it wrong to say that Regulation X and RESPA does not afford protections for a borrower when a foreclosure sale is had and a modification plan is offered thereafter. That is exactly what happens in every non-judicial foreclosure state, excuse me, in every judicial foreclosure state. But getting back to the point that you raised before, the commentary, which talks about reasonable steps have to be taken, it's, I mean, in looking through the Federal Register pages, it seems to me that what is being said there is that a reasonable, you have to take reasonable steps to prevent the sale. And reasonable steps can include rescheduling the sale or staying the sale. Either one of those would be okay, provided that you're taking reasonable steps to prevent the sale. So if that's, first of all, do you agree or disagree with that? And second, if you do agree with that, then what is the problem here since they moved to reschedule the sale? Your Honor, there's actually a few points. One, I agree with it to some extent. I would actually more be inclined to agree with Judge Hull on a point where that she said maybe we would be happy if they would have pushed it out beyond the terms of the modification. Whereas Round Point itself says in its motion to dismiss its response, excuse me, its reply, and in addition, its briefs, that essentially they were only trying to do a favor for the borrower so that they don't incur additional costs and fees should they fail to perform. So if that's the case, then push it out further. There's an additional remedy they could have then come back and said. So I think they could have come back and moved to have it reset sooner. But so I'm sorry, I may misunderstand. Are you saying that had they asked to reschedule the sale for a period after the loan, the temporary loan modification period ended, then that would have been permissible under the regulation? I would say that there is a possibility of being able to reschedule it. But to ask the court to reset the sale, I think, again, flies in the face of the regulation. When the court's asking me if I think that something is reasonable, on a personal level, sure. But as far as the regulation, which is what we're limited to, I do not believe that that is permitted under any circumstances. Sorry. But that's OK. Just for purposes of understanding your point, though, your position is that the regulation would have allowed Round Point to reschedule the sale provided that it sought to do so beyond the temporary loan modification period. Is that correct? No, Your Honor. OK, that's where I'm misunderstanding. So my position is only on a personal level. I'm addressing it only as a personal level that I believe, Your Honor, correct me, please, if I misunderstood. I understood, Your Honor, asking me if I believe that that would be a reasonable step to extend it beyond the period of the trial modification. Perhaps. But what I mean is, would it be a reasonable step under the regulation? I'm sorry if I was unclear. And I apologize for interrupting. That's OK. Why would it not be? Because it makes very clear in a delineation, especially in a judicial foreclosure state like Florida, that you may not move for a final judgment or order of sale or conduct a foreclosure sale. It makes that point because in a judicial foreclosure state, unlike a nonjudicial foreclosure state, and we said this before, the determination of whether or not that sale gets canceled isn't up to the servicer, isn't up to the borrower. It's up to the third party who's uninterested. And if they, like they did on the indicia of the order, circle the case number because look at the year, because Florida Supreme Court sent down a mandate, we got to move these cases along pursuant to the rules of judicial administration. The fact remains that there's a hidden element out there that has another factor that is not being considered. That is why the Federal Register makes it clear. That's why they carved it out. There is a carve out for Florida and Illinois and judicial foreclosure states like them that apply to those two prongs prior to the third prong. Unlike a nonjudicial foreclosure state, which the Federal Register makes clear, they only have to adhere to that one. And the defendant, and I will just say because the defendant mentioned that he could not find any case law. And the court seemed to suggest that the reason for that is because, well, the regulations don't address that. And I would posit slightly differently. The reason why there's not a breadth of case law, although you have the Fox case out of Illinois, which again is a judicial foreclosure state, is because it's such a basic fundamental principle where that when a statute orders, when a statute commands that no orders of sale shall be moved for, that's what it means. And that's what Judge Carnes has stood for. That's what Judge Hull has stood for. Excuse me, counsel. I stand for a lot of things, but I don't stand for anything regarding foreclosure sales. No, and I don't mean to say that your honor does, but I have pages and pages in my binder here. I wish your honor were present to be able to see it. But nevertheless, I have pages and pages of your honor stating that the holdings of a prior decision can reach only as far as the facts and circumstances presented to the court. I'm familiar with the law. I'm just not convinced that it applies in your favor in this case. I would like to ask your honor what is preventing that belief that it goes in our favor? Well, unfortunately for you, the questions run in the other direction. Uh, if your honor could elaborate, I'd be happy to address that. I'll elaborate. I ask you the questions. You don't ask me the questions. Yes, your honor. And I don't mean that in an ugly way, as my grandmother would say. I'm just saying that that's the way that appellate arguments work. And don't feel bad about being confused about that. Justice Kagan, before she became Justice Kagan, made the mistake of asking Justice Scalia when she was arguing cases, Solicitor General, a question. And let me just say, I'm being nicer to you than he was to her. And I appreciate that, your honor, very much so. All right. Thank you, counsel. Chief, did you have any other questions before? No, no, thank you. That was very helpful on both sides. Yes, thank you, counsel. We'll be in recess.